Case 05-61640    Filed 02/29/08    Doc 21

FILED

FEB 29 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>Pearlie Mae Thompson,<br><br>        Debtor.<br> | Case No. 05-61640-B-7 |

**MEMORANDUM REGARDING DEBTOR'S MOTION TO DISMISS**

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.

      This Memorandum supplements and clarifies for the record the reasons behind the court's Minute Order granting the Debtor's Motion to Dismiss Case entered on February 4, 2008, after a noticed hearing. The debtor, Pearlie Mae Thompson (the "Debtor") appeared *pro se*. Sheryl Ann Strain appeared in her capacity as the chapter 7 trustee (the "Trustee"). The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 11 U.S.C. § 707[1] and General Orders 182 and 330 of the U.S. District for the Eastern District of California This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *prior to* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23 (BAPCPA).

**Background.**

This case was filed in October 2005. Some time after that, the Debtor's attorney of record ceased practicing law, leaving the Debtor, a senior widow, to fend for herself. The Debtor's schedules listed only one nonexempt asset described as "3 Shares in Oil, Face Value Unknown, Debtor received gross income of $449.30 in the year of 2004" (the "Oil Interest"). The Oil Interest was valued at $0 and the case was originally noticed to all creditors as a "no-asset" case. However, the Debtor's Statement of Financial Affairs suggested that the Oil Interest had some potential value to the estate listing income from the Oil Interest in the amount of $1,044.31 in 2004; $192.01 in 2003; and $786.13 in 2002.

The meeting of creditors concluded on December 7, 2005. On December 13, 2005, the Trustee filed a form titled "Report of 341 Meeting" (the "Initial 341 Report"). Although the Trustee checked the box on the Initial 341 Report indicating that the case was an "asset case," the Trustee neglected to also check the box which would have directed the clerk to serve creditors with a notice to file claims and the bar date for doing so. Had that notice been served, it would have fixed a claims bar date in March 2006.

The Debtor's discharge was entered without objection in February 2006. On October 3, 2006, almost ten months after the Trustee filed her Initial 341 Report, she filed an amended report, disclosing again the discovery of a potential asset in the case and requesting that the clerk issue a notice to creditors to file claims (the "Amended 341 Report"). In response, the clerk served all creditors with a "Notice to File Proof of Claim Due to Possible Recovery of Assets" (the "Notice") with a bar date of January 3, 2007, thus fixing a new claims bar date almost 13 months after conclusion of the § 341 meeting. Three creditors filed

unsecured claims in this case, all appear to be based on credit cards.[2]

The docket shows that there was no further activity in this case for almost 14 months. On November 29, 2007, more than two years after commencement of the case, the Debtor, by way of a handwritten note mailed to the court, requested permission to substitute herself *pro se* for her attorney who had purportedly "retired." That request was approved. On December 4, 2007, the Debtor wrote another letter to the court requesting that the bankruptcy case be dismissed. The court deemed this letter to be a motion to dismiss pursuant to § 707(a) (the "Debtor's Motion to Dismiss"). The Debtor's Motion to Dismiss was docketed on January 17, 2008. It was served by the clerk on the Trustee, the U.S. Trustee, and the three creditors that filed proofs of claim, and set for hearing January 30, 2008.

In support of the Debtor's Motion to Dismiss, the Debtor stated that she had contacted the three creditors that filed claims. She avowed that one creditor had charged off the debt and that the debt had been removed from her credit report. The other two creditors no longer had any record of the Debtor's account. The Debtor requested dismissal, stating that she "is very distraught in regards to this matter" and is "seeking closure." None of the creditors served with the Debtor's Motion to Dismiss filed an opposition to dismissal or appeared at the hearing. The Trustee filed a responsive pleading in which she did not oppose dismissal, but asked the court to revoke the Debtor's discharge as a condition of dismissal (the "Trustee's Response").[3]

The Trustee's Response is quite vague and noncommittal. She states that she attempted to obtain bids for the Oil Interest *sometime in 2006*. The high bid at

---

[2] Discover Bank filed a proof of claim in the amount of $9,540.48. Target National Bank filed a proof of claim in the amount of $4,323.95. Citibank filed a proof of claim in the amount of $3,412.75.

[3] Revocation of a discharge requires an adversary proceeding (Rule 7001(4)) and a showing of grounds under 11 U.S.C. § 727(d). That request is not properly before the court.

that unspecified time was $1,900. The Trustee did not demand turnover of the Oil Interest and did not bring a motion to sell the asset. "Some of the bidders" informed the Trustee that she could perhaps receive a better offer if she first obtained a two-year history of the royalty payments, which she did.[4] Sometime during *the following year*, the Trustee *again* tried to sell the Oil Interest; she *recently* received an offer for $3,250. The Trustee estimates that such a sale would fund a 15% distribution to the three unsecured creditors. The Trustee states that a motion to sell the Oil Interest had been prepared when the Debtor wrote her letter to the court in early December 2007. However, no such motion had been filed by mid-January 2008, when this court docketed the Debtor's Motion to Dismiss, set the matter for hearing, and made the Debtor's letter known to the Trustee.

## APPLICABLE LAW AND ANALYSIS.

### Voluntary Dismissal.

In chapter 7, a debtor does not have an absolute right to dismiss, as is the case in a chapter 13. The Bankruptcy Code does not clearly prescribe a standard to be applied when a debtor moves for dismissal of her own chapter 7 case. Section 707(a) provides that a chapter 7 case may be dismissed after notice and a hearing, and *only for cause*.[5] Some showing of cause is required for dismissal, even when requested by the debtor. 6 *Collier on Bankruptcy,* (15th Ed. Revised), ¶ 707.03 [3] at 707-22. When the debtor requests dismissal, "the cause may simply be that

---

[4] The Debtor's schedules list the income she received from the Oil Interest for three years prior to the bankruptcy. It is not clear what additional information the Trustee needed or why it took such a long time to obtain and review that information.

[5] Pursuant to § 707(a), a court may dismiss a chapter 7 bankruptcy petition filed only after notice and a hearing and only for cause, including -

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days . . . the information required by paragraph (1) of section 521 . . . .

dismissal is in the best interest of the debtor and not prejudicial to creditors. The debtor's best interest lies generally in securing an effective fresh start upon discharge and in the reduction of administrative expenses . . . ." *Id*. Debtors are not generally permitted to dismiss their case over the objections of creditors or the trustee to gain some advantage over the creditors. *Id*. at 707-23.

"The grounds that § 707(a) lists as providing 'cause' for dismissal are illustrative and not exhaustive." *In re Padilla*, 222 F.3d 1184, 1191 (9th Cir. 2000) (citations omitted). Factors that courts consider include: 1) whether all of the creditors have consented; 2) whether the debtor is acting in good faith; 3) whether an objection to discharge, an objection to exemptions, or a preference claim is pending. *In re Turpen*, 244 B.R. 431, 434 (8th Cir. BAP 2000) (citations omitted). "In its simplest terms, the test turns on whether or not the dismissal is in the best interests of the debtor and the creditors of the estate, with particular emphasis on whether the dismissal would be prejudicial to creditors." *In re Aupperle,* 352 B.R. 43, 46 (Bankr. D.N.J. 2005) (citations omitted). The determination of whether it is proper to grant a debtor's motion to dismiss is, "guided by equitable considerations and committed to the sound discretion of the bankruptcy court." *In re Hull*, 339 B.R. 304, 308 (Bankr. E.D.N.Y. 2006).

In any motion to dismiss a chapter 7, the moving party has the burden of proof. The court has therefore reviewed the Debtor's statements in support of her Motion to Dismiss, the Trustee's Response, and the record of this case for evidence relevant to the issues of "cause" and "prejudice to creditors."

**Cause for Dismissal.**

The "cause" asserted by the Debtor for dismissal of her case is the need for finality. By implication, the Debtor is also asking the court to consider the length of time this case has been open (over two years), with no apparent progress or foreseeable date for its conclusion. In other words, the Debtor wishes her case to be expeditiously closed so she can get on with her "fresh start."

5

Pursuant to § 704(1) & (4), the chapter 7 trustee *shall, inter alia*, investigate the debtor's financial affairs, collect the property of the estate, reduce it to money, distribute the money to the creditors, and close the estate "as *expeditiously* as is compatible with the best interests of parties in interest." (emphasis added). "[A] chapter 7 trustee voluntarily assumes a statutory duty under 11 U.S.C. § 704(1) to collect and reduce to property of the estate for which trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." *In re C. Keffas & Son Florist, Inc.*, 240 B.R. 466 (Bankr. E.D.N.Y. 1999). The Debtor is by definition a "party in interest" in her own case and necessarily has an interest in the "expeditious" administration of her case.

There is an undeniable tension between the trustee's duty to both administer the estate expeditiously, and to maximize recovery from the liquidation of assets. "In short, it is the trustee's duty to both the debtor and the creditors to realize from the estate all that is possible for distribution among the creditors." 6 *Collier on Bankruptcy*, (15th Ed. Revised), ¶ 704.02[3] at 704-12. Conversely, the trustee's duty to expeditiously close the estate has been described by courts as the trustee's "main" duty under § 704. *In re Riverside-Linden Inv. Co.*, 85 B.R. 107, 111 (Bankr. S.D. Cal. 1988), *aff'd.*, 99 B.R. 439 (9th Cir. BAP 1989), *aff'd.*, 925 F.2d 320 (9th Cir. 1991) (citation omitted).

Obviously, in an asset case, the trustee needs a reasonable period of time to investigate the debtor's financial affairs and to gather and liquidate the assets. However, any benefit derived from delay is not without an offsetting cost, *i.e.*, the inevitable injury suffered both by the creditors, as lost opportunity costs, and by the debtor, in delaying her "fresh start." In the administration of a chapter 7 case, the trustee must employ a reasonable approach which balances those costs against the potential benefits. Here, the Trustee did almost nothing in this case for over two years except review some dividend statements and wait to see if she could get a little more money for the Oil Interest. A trustee's failure to reasonably expedite

the administration of a case can be cause to dismiss the case under § 707(a).

**Debtor's Good Faith.**

In the case, *In re Aupperle*, 352 B.R. 43, the court granted the debtor's motion to dismiss a voluntary chapter 7 bankruptcy petition. The debtor had filed a petition believing in good faith that she could exempt the entire equity in her home. When the trustee requested additional documents after the § 341 meeting to evaluate possible nonexempt equity in the home, the debtor realized that she could lose her home and moved to dismiss the case over the trustee's opposition. The court found cause to dismiss the case and noted that none of the debtor's creditors had responded to the motion. The court stated: "We have no reason to believe, and the trustee has not asserted, that the debtor's request constitutes bad faith." In this case, neither the creditors nor the Trustee oppose the Debtor's Motion and the court has no reason to doubt the Debtor's good faith.

**Prejudice to Creditors.**

The Debtor has already received her discharge which means that she is no longer obligated to pay any of her dischargeable debts. Ordinarily, this could result in significant prejudice to the unsecured creditors if there were assets worth administering and the case was dismissed before distribution on their claims. However, § 707(a) makes no distinction between dismissal before and after the discharge is entered – it does not require revocation of the discharge upon dismissal. This case was originally docketed as a "no asset" case. The court notes that no creditor objected to the Debtor's discharge, or to dischargeability of its claim against the Debtor, even when this was understood to be a "no-asset" case with no hope of any recovery by the creditors. The only creditors in this case have apparently charged off their claims, closed their books, and given up on the bankruptcy system long ago.

There is no showing that the Oil Interest had any value that was worth administering at the commencement of the case. There is no showing, only

speculation, that liquidation of the Oil Interest today would result in an eminent or significant distribution to the creditors. If there was ever any small benefit for the creditors in this case, then § 704's "expeditious" mandate suggests that the Trustee should have made that determination and administered the asset early in the case. It was not a reasonable exercise of the Trustee's duty under § 704 to report this as an "asset case" and then to hold the case open for more than two years speculating that she may be able to generate some small value from that asset. In the absence of a likely substantial distribution to unsecured creditors after the delay and expense of further administration, the court is persuaded that dismissal of the case at this time will not significantly prejudice any creditor.

**Conclusion.**

Based on the foregoing, the court finds and concludes that cause exists to dismiss this bankruptcy. Under § 704 the Trustee had a duty to administer the assets and close the case in a reasonably expeditious manner. The administration of this case was neither expeditious nor reasonable. Dismissal will not prejudice the creditors significantly more than they have already been prejudiced by the delay. The Debtor has as much interest in diligent administration as does the Trustee and creditors. The Debtor's "fresh start" does not really begin until the case is closed.

Dated: February 29, 2008

W. Richard Lee,
United States Bankruptcy Judge